**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 20-cv-2619-WJM-NYW

GROWCENTIA, INC.,

      Plaintiff,

v.

JEMIE B.V.,

      Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(2) FOR LACK OF PERSONAL JURISDICTION AND 12(b)(5) FOR INSUFFICIENT SERVICE OF PROCESS**

---

This matter is before the Court on Defendant Jemie B.V.'s ("Jemie") Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2) for Lack of Personal Jurisdiction and 12(b)(5) for Insufficient Service of Process ("Motion"). (ECF No. 23.) For the following reasons, the Motion is granted.

## I. BACKGROUND[1]

The following factual summary is drawn from Plaintiff Growcentia, Inc.'s ("Growcentia") Complaint for Declaratory Judgment (ECF No. 1), except where otherwise noted. The Court assumes the allegations contained in the Complaint to be true for the purpose of deciding the Motion. *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

---

[1] Citations to (¶ __), without more, are references to the Complaint. (ECF No. 1.)

Growcentia is a Delaware corporation with its principal place of business in Fort Collins, Colorado.  (¶ 6.)  Growcentia produces "science-based solutions for cannabis and hemp cultivators under its recognizable MAMMOTH product line."  (¶ 1.) Growcentia added a new product to its MAMMOTH product line called CANNCONTROL, which is a fungicide and pesticide to help cultivators grow cannabis. (¶ 2.)  The CANNCONTROL product is always packaged and sold with Growcentia's MAMMOTH mark.  (*Id.*)

Jemie is a Dutch limited liability company with its principal place of business in Oosterhout, The Netherlands.  (¶ 7.)  According to the Declaration of Sanne Heestermans, a Legal Coordinator for Canna Corporate B.V., Jemie is an intellectual property holding company that does not manufacture, sell, advertise, distribute, or market any products or services to anyone in the United States.  (ECF No. 23-1 ¶ 3.) Jemie purports to own several CANNA and "CANNA-formative" trademarks for goods and services in the cannabis field.  (¶ 3.)  On July 28, 2020, Jemie sent Growcentia a letter demanding that "Growcentia expressly abandon its CANNCONTROL application and '[n]ever seek to register or use the CANNCONTROL name or mark, or any other name, mark, or domain name incorporating CANN or CANNA' for goods or services related to seed or plant cultivation, nutrition, growth, or care."  (*Id.*; ¶ 20; ECF No. 5.)

On August 28, 2020, Growcentia filed this action seeking a declaratory judgment of non-infringement of trademark.  (¶¶ 40–45.)  Specifically, Growcentia alleges that an actual case or controversy exists between the parties because Jemie has alleged that Growcentia's CANNCONTROL mark and products are likely to cause consumer confusion with Jamie's CANNA and CANNA-formative marks in the United States.  (¶

12.)  As a result, Jemie has asserted that Growcentia's CANNCONTROL mark infringes

upon its purported exclusive rights and trademarks and has attempted to limit

Growcentia's marketing and sales of goods containing the CANNCONTROL mark.  (*Id.*)

Growcentia disputes Jemie's contentions, alleging that Jemie's purported area of

exclusive rights is narrower than Jemie asserts, and that the manner in which

Growcentia will and does market, advertise, and promote its products will not cause

confusion or otherwise infringe any trademarks or other rights of Jemie.  (*Id.*)

Growcentia alleges that the Court has personal jurisdiction over Jemie for the

following reasons:

> Upon information and belief, this Court has personal
> jurisdiction over Jemie, as it has purposely directed
> substantial commercial activities in this State and derives
> substantial revenue from substantial, continuous, and
> systematic business activities, including interstate
> commerce, directed in this State and District.  On information
> and belief, this conduct includes dealership agreements with
> approximately ten retailers of Jemie's products in this
> District.  On information and belief, Jemie has no less than 4
> "Preferred Dealers" located in this State and District.  By
> virtue of these actions, Jemie has purposefully availed itself
> of the privilege of conducting business in this State and in
> this District and is subject to jurisdiction in this Court under
> Colo. Rev. Stat. § 13-1-124.

(¶ 10.)

On November 5, 2020, Jemie filed the Motion, arguing that the Court lacks

personal jurisdiction and that Growcentia failed to properly serve Jemie under Federal

Rule of Civil Procedure 12(b)(5).  (ECF No. 23.)  Growcentia filed a response in

opposition (ECF No. 25), and Jemie filed a reply (ECF No. 28).  On June 9, 2021, Jemie

filed an Unopposed Motion for Status Update Regarding Pending Motion to Dismiss.

(ECF No. 64.)

## II. LEGAL STANDARD

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) is to determine whether the Court has personal jurisdiction over a defendant. The plaintiff bears the burden of establishing personal jurisdiction, and may satisfy this burden by making a prima facie showing that personal jurisdiction over the defendants obtains. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). "In the preliminary stages of the litigation, however, the plaintiff's burden is light." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). If the presence or absence of personal jurisdiction can be established by reference to the complaint, the Court need not look further. *Id.* The plaintiff, however, may also make this prima facie showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant. *Id.* "[A]ny factual disputes in the parties' affidavits must be resolved in plaintiff's favor." *Id.*

## III. ANALYSIS

The Court recognizes that proper service is a jurisdictional prerequisite to litigation. *See Sarnella v. Kuhns*, 2018 WL 1444210, at *1 (D. Colo. Mar. 23, 2018). "Effectuation of service is a precondition to suit . . . ." *Jenkins v. City of Topeka*, 136 F.3d 1274, 1275 (10th Cir. 1998). Without proper service, the Court lacks personal jurisdiction over a defendant. *See Okla. Radio Assocs. v. FDIC*, 969 F.2d 940, 943 (10th Cir. 1992).

Here, Jemie challenges both the Court's personal jurisdiction as well as whether Growcentia properly served process on Jemie as required by the Hague Convention. (ECF No. 23.) Upon review of the papers, it is far from clear whether Growcentia has

4

properly complied with Rule 12(b)(5).  Nevertheless, assuming *arguendo* that

Growcentia failed to properly serve process on Jemie—rendering the Court without

personal jurisdiction—the Court would not dismiss the case, but would instead direct

Growcentia to properly serve process on Jemie.  Thus, even if Growcentia properly

effected service of process in the future, the Court would still have to reach the question

of whether it has personal jurisdiction over Jemie.  Therefore, in the interest of judicial

efficiency, the Court will address the ultimate question of its personal jurisdiction over

Jemie first.

## A.      Whether the Federal Statutes Authorize Service of Process

In the Complaint, Growcentia alleges that the Court has subject matter

jurisdiction under 15 U.S.C. §§ 1119 and 1121 (the Lanham Act), and 28 U.S.C. §§

2201 and 2202 (the Declaratory Judgment Act).  (¶ 19.)  Further, Growcentia alleges

that this Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§

1331, 1338, and 1367.  (*Id.*)  Growcentia does not allege that this Court has diversity

jurisdiction.  (*See generally* ECF No. 1.)  Prior to exercising personal jurisdiction over a

defendant based on federal question jurisdiction, a district court must determine: "(1)

whether the applicable statute potentially confers jurisdiction by authorizing service of

process on the defendant and (2) whether the exercise of jurisdiction comports with due

process."  *Tyrrell v. Lexidan, Inc.*, 2020 WL 996877, at *2 (D. Colo. Mar. 2, 2020)

(quoting *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (internal citations and

quotation marks omitted)).  If the federal statute is silent as to service of process, a

district court looks to the law of forum state.  *Id.*

As an initial matter, the Court notes that the parties ignore this aspect of the

personal jurisdictional analysis.  Instead of addressing whether the pertinent federal

statutes potentially confer jurisdiction by authorizing service of process on Jemie, the parties skip ahead to whether the Court may exercise jurisdiction under the Colorado long-arm statute, which would be appropriate under a case invoking the Court's diversity jurisdiction—which the Complaint does not do.

Nonetheless, because *Trujillo* states that the Court "must determine" this issue, the Court now does so.  *Trujillo*, 465 F.2d at 1217.  17 U.S.C. § 501 and § 1202 are silent as to service of process.  *See Tyrell*, 2020 WL 996877, at *2 (citing *Job Store, Inc. v. Job Store of Loveland, Ohio, LLC*, 2016 WL 9735786, at *2 (D. Colo. Sept. 7, 2016)). The Lanham Act does not authorize nationwide service of process (much less worldwide service, which would be required here to serve this Dutch defendant).  *See Job Store*, 2016 WL 9735786, at *2.  Similarly, the Declaratory Judgment Act does not provide for nationwide service of process.  *Dudnikov*, 514 F.3d at 1070.  A fellow judge in this District has observed that "§ 1338 jurisdiction" leads to Colorado's long-arm statute, implying there is also no provision for service of process under that statute. *See Tyrell*, 2020 WL 996877, at *2.  And the Court sees no provision for service in 28 U.S.C. §§ 1331 or 1367.  Therefore, given that the federal statutes are silent as to service of process, the Court must analyze the application of personal jurisdiction under both Colorado's long-arm statute and the Constitution.  *See id.*

## B.    Specific Jurisdiction[2]

The Colorado long-arm statute, Colorado Revised Statutes § 13-1-124, has been

---

[2] While the Complaint alleges that the Court has general personal jurisdiction over Jemie (¶ 10), in its response, Growcentia does not contest Jemie's arguments that it is not subject to this Court's general personal jurisdiction (ECF No. 25).  In addition, Growcentia uses a heading entitled "This Court Has Specific Jurisdiction Over Jemie."  (*Id.* at 3.)  Thus, as Jemie points out (ECF No. 28 at 1), Growcentia has conceded that Jemie is not subject to general personal jurisdiction, and the Court will solely analyze whether it may exercise specific personal jurisdiction over Jemie.

construed to extend jurisdiction to the full extent permitted by the United States

Constitution, so the jurisdictional analysis in this case reduces to a single inquiry of

whether jurisdiction offends due process.  *See Job Store*, 2016 WL 9735786, at *2

(citing *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005);

*Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005)); *see also Tyrell*,

2020 WL 996877, at *3 (noting that there is no need for a long-arm statutory analysis

separate from the due process inquiry required by *International Shoe Co. v. State of*

*Washington*, 326 U.S. 310 (1945) and its progeny).  Personal jurisdiction comports with

due process where a defendant has minimum contacts with the forum state and where

those contacts are such that assuming jurisdiction does not offend "traditional notions of

fair play and substantial justice."  *Int'l Shoe*, 326 U.S. at 316.

The specific jurisdiction analysis is two-fold.  First, the Court must determine

whether Defendant has such minimum contacts with Colorado that he "should

reasonably anticipate being haled into court" here.  *World-Wide Volkswagen Corp. v.*

*Woodson*, 444 U.S. 286, 297 (1980).  Within this inquiry, the Court must determine

whether Jemie purposefully directed its activities at residents of the forum, *Burger King*

*Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985), and whether Growcentia's claim arises

out of or results from "actions by . . . [the defendant] . . . that create a substantial

connection with the forum State," *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480

U.S. 102, 109 (1987) (internal quotations omitted).  Second, if Jemie's actions create

sufficient minimum contacts, the Court must consider whether the exercise of personal

jurisdiction over Jemie offends "traditional notions of fair play and substantial justice."

*Job Store*, 2016 WL 9735786, at *5 (citation omitted).  This latter inquiry requires a

7

determination of whether the Court's exercise of personal jurisdiction over Jemie is

"reasonable" in light of the circumstances of the case.  *Id.*

For the following reasons, the Court finds that Jemie lacks the minimum contacts

with the District and State of Colorado such as would be required for the Court to

exercise personal jurisdiction over it in this forum.

1.      Jemie's Cease and Desist Letter

First, the only *direct* contact Jemie has had with Colorado is the cease and desist

letter it sent to Growcentia's counsel.  (ECF No. 5.)  Citing with approval Federal Circuit

precedent, the Tenth Circuit has found that "a single cease-and-desist letter is

insufficient to confer jurisdiction in a declaratory judgment action . . . ."  *C5 Med. Werks,*

*LLC v. CeramTec GmbH*, 937 F.3d 1319, 1324 (10th Cir. 2019) (citing *Inamed Corp. v.*

*Kuzmak*, 249 F.3d 1356, 1361 (Fed. Cir. 2001) ("We have . . . repeatedly held that the

sending of an infringement letter, without more, is insufficient to satisfy the requirements

of due process when exercising jurisdiction over an out-of-state patentee.")).  Thus,

Jemie cannot expect to be haled into the District of Colorado merely based on the

cease and desist letter that it sent to Growcentia's counsel.  Jemie argues that the

jurisdictional inquiry can end here but, for the sake of completeness, addresses

Growcentia's other arguments.  (ECF No. 28 at 3.)  The Court agrees, as this is the only

evidence directly linking Jemie itself to Colorado and this action, but like Jemie, finds it

appropriate to address Growcentia's additional arguments regarding personal

jurisdiction.

2.      Hortisol USA Corp.'s Contacts

In its response, Growcentia primarily relies on the actions of Jemie's U.S.

trademark licensee, non-party Hortisol USA Corp. ("Hortisol"), to argue that the Court

may exercise personal jurisdiction over Jemie.  Growcentia points to Hortisol's

advertising, marketing, and selling of CANNA products in the United States and

Colorado to demonstrate Jemie's minimum contacts with Colorado.  (ECF No. 25 at 1,

4–7.)  In connection with this argument, Growcentia contends that Jemie "cannot use

Hortisol as a shield against personal jurisdiction while using Hortisol's marketing efforts

as a sword in its infringement allegations."  (ECF No. 25 at 7.)  Despite such arguments,

for the following reasons, the Court finds such reliance unavailing.

a.       *Business Relationship Between Hortisol and Jemie*

The Court first examines the business relationship between Jemie and Hortisol to

determine whether imputing Hortisol's purported contacts with Colorado to Jemie is

appropriate.  Hortisol is a Delaware corporation with its principal place of business in

Los Angeles, California.  (ECF No. 23 at 3; ECF No. 23-4 ¶ 2; ECF No. 23-5.)

According to Heestermans, Hortisol is not controlled by Jemie, nor does Hortisol control

Jemie.  (ECF No. 23-1 ¶ 4.)  Rather, the companies "are only remotely affiliated," and

Jemie is "not a parent, subsidiary, or sister company of Hortisol."  (*Id.*)  Moreover,

Heesterman states there is "no direct corporate relationship" between the companies

and that they "do not operate as a joint venture."  (*Id.*)

While Heesterman concedes that "Hortisol and Jemie do conduct business with

each other," it is "only through an arms-length, confidential, and exclusive trademark

license and sales agreement which is governed by Dutch law."  (*Id.* ¶ 6.)  Jemie itself is

"an intellectual property holding company that does not manufacture, sell, advertise,

distribute or market any products to anyone in the United States, nor does it sell,

advertise, provide or market any services to anyone in the United States."  (ECF No. 23-

1 ¶ 3.)  It is Hortisol that "licenses trademarks owned by Jemie for use on products

manufactured and sold by Hortisol throughout the United States." (*Id.*)  The two

companies maintain separate corporate identities and independent operations.  (*Id.* ¶

8.)

Heesterman acknowledges that the President and Vice President of Hortisol are

also directors of Jemie, but he states that they "have separate duties and different

obligations in performing their discrete roles within each company, and these

responsibilities do not overlap." (*Id.*)  Growcentia points out, and Jemie does not

dispute (ECF No. 28 at 8), "the CEO, Secretary, and CFO positions of Hortisol are also

occupied by those same Jemie directors" (ECF No. 25 at 8 (citing ECF No. 25-5)).

Based on the foregoing, the Court cannot find, as Growcentia suggests, that

Hortisol is "Jemie's domestic counterpart" or that Hortisol "acts as Jemie's U.S. based

extension." (ECF No. 25 at 2–3, 7.)  Growcentia's argument that "Jemie must exert

control over Hortisol and its uses of the CANNA marks" (*id.*) is a conclusory argument

unsupported by a citation to the record evidence, and it does not refute the

aforementioned statements in Heestermans's declaration that Jemie and Hortisol are

separate entities who do business with each other at arm's length and through a Dutch

licensing agreement.  While Growcentia emphasizes that the President, Vice President,

CEO, Secretary, and CFO positions of Hortisol are occupied by Jemie directors, it fails

to provide evidence that this corporate overlap—which according to Jemie does not

equate with overlap in the individuals' responsibilities regarding the two companies—

somehow means Hortisol's contacts are also Jemie's contacts.  The Court agrees with

Jemie that in an effort to assert that the Court has personal jurisdiction over Jemie,

"Growcentia conflates the roles of Jemie and . . . Hortisol." (ECF No. 28 at 4.)

Had Growcentia provided the licensing agreement between Jemie and Hortisol and pointed to evidence of direction and control over Hortisol's sales activities therein, the result might be different; however, the Court sees no such evidence before it.  *See Eco Pro Painting, LLC v. Sherwin-Williams Co.*, 807 F. Supp. 2d 732, 737 (N.D. Ill. 2011) ("A key factor in evaluating whether a licensor's status confers jurisdiction is the amount of control the licensor retains over the licensee.").  Under these circumstances, as the Court explains below, Growcentia's attempts to attribute Hortisol's purported contacts with Colorado to Jemie are unavailing.

b.      *Hortisol's Purported Contacts with Colorado*

Next, the Court analyzes Growcentia's attempts to link Jemie and Hortisol through advertising and sales on the Internet.  In addition to attempting to demonstrate the close business connection between Jemie and Hortisol, and thus the appropriateness of imputing Growcentia's purported Colorado contacts to Jemie, Growcentia also argues that Jemie purposefully directed activities to Colorado by advertising to consumers in Colorado and directing consumers to purchase its products Colorado from more than 20 Colorado-based "CANNA Dealers" on the website www.cannagardening.com.  (ECF No. 25 at 4–7.)

As an initial matter, while in its response Growcentia confusingly refers to the website as *Jemie's* website (ECF No. 25 at 4), in Jemie's reply, Jemie states that cannagardening.com is actually "operated by Hortisol doing business as Canna Continental."  (ECF No. 28 at 6.)  Additionally, while Growcentia observes that the website identifies preferred "CANNA dealers" in Colorado, there is no reference to Jemie.  (ECF No. 25-2.)  Further, the screenshot of the website which purportedly identifies Colorado dealers *also* identifies other dealers in the United States.  The

11

Court's review of the map provided by Growcentia shows no less than four other states

with preferred dealers, including Nevada, Arizona, New Mexico, and Oklahoma.[3]  (*Id.*)

The Court agrees that "[t]o the extent Hortisol directs the advertising of products bearing

Jemie's marks, including on the <cannagardening.com> website, such advertising

targets the U.S. as a whole and not Colorado specifically, which has been held to be

insufficient to establish personal jurisdiction."  (ECF No. 28 at 7 (citing *Fischer v. BMW

of N. Am., LLC*, 376 F. Supp. 3d 1178, 1183 (D. Colo. 2019)).)  In another case

analyzing personal jurisdiction, the undersigned found that "[n]ational marketing that

merely incidentally reaches Colorado consumers is not sufficient to show that [the

defendant] purposefully directed its activities at Colorado residents."  *Durango Merch.

Servs., LLC v. Flagship Merch. Servs., LLC*, 2019 WL 3205958, at *2 (D. Colo. July 16,

2019).  The same conclusion applies here.

The Court also reviewed Canna USA's Facebook post regarding the results of a

contest in Colorado in October 2018.  (ECF No. 25-7.)  However, the Court sees no

reference to Jemie on that exhibit.  Even if such a reference existed, this single example

of a Colorado connection would be woefully short of demonstrating that the Court could

exercise specific jurisdiction over Jemie in a manner which comports with the

requirements of due process.

Finally, Growcentia relies on a stream of commerce theory to persuade the Court

that it may exercise specific jurisdiction over Jemie, arguing that in addition to Jemie's

"direct advertising, promotion, and sales of CANNA products in Colorado . . . the Court

*also* has personal jurisdiction over the claims against Jemie because it places it[s]

---

[3] There very well may be other preferred dealers throughout the United States that are not referenced in the screenshot in the exhibit.

CANNA products . . . into the stream of commerce with the expectation that they will be sold in Colorado." (ECF No. 25 at 8–12 (emphasis in original).) *See World-Wide Volkswagen*, 444 U.S. at 298 (noting that personal jurisdiction exists where "a corporation [ ] delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state").

As an initial matter, the Court is skeptical that the stream of commerce line of cases applies to this set of facts, where Jemie is an intellectual property holding company that licenses its trademarks to Hortisol, not a manufacturer selling its products through a distributor. *See, e.g.*, *Eco Pro Painting*, 807 F. Supp. 2d at 736–37 ("The mere existence of a licensor-licensee relationship, without more, is insufficient to impute the contacts of a licensee on the licensor for the purpose of establishing personal jurisdiction." (citing *Sinclair v. StudioCanal, S.A.*, 709 F. Supp. 2d 496, 510 n.8 (E.D. La. 2010)) (internal quotation marks omitted)). Of course, the Court understands the parallel Growcentia tries to draw between the manufacturer/distributor relationship and the licensor/licensee-manufacturer relationship; it simply does not appear supported by the traditional stream of commerce law Growcentia cites. This is not a case arising from potential liability over the sale of faulty products in Colorado. In fact, Growcentia has not yet suffered any injury (*see* ECF No. 28 at 3); while Growcentia alleges a case and controversy exists (which the Court accepts for the sake of argument), this case is, at bottom, a declaratory judgment action.

Nonetheless, analyzing this action under the stream of commerce cases does not help Growcentia.[4] Growcentia argues that the Court has personal jurisdiction here

---

[4] Growcentia sets forth a thorough analysis of the history of Supreme Court precedent pertaining to personal jurisdiction and the stream of commerce theory. (ECF No. 25 at 8–12.)

because there is a regular flow of Jemie's CANNA products into Colorado.  (ECF No. 25 at 10 (citing *Asahi*, 480 U.S. at 111).)  Further, Growcentia contends that even if the Court applies the more rigorous standard set forth in *Asahi* by Justice O'Connor, which requires "something more" than that the defendant was aware of its product's entry into the forum state through the stream of commerce, the Court still has personal jurisdiction over Jemie.  *Asahi*, 480 U.S. at 112.  For support, Growcentia points to Jemie's "advertising its association with CANNA products in the stream of commerce by permitting them[5] to use Jemie's CANNA and CANNA-formative marks and directing consumers to purchase these goods in this State."  (ECF No. 25 at 11.)  Additionally, Growcentia underscores that Jemie has purposefully directed other activities to Colorado, including Colorado-based promotions, attending (and sponsoring) events in Colorado, maintaining distributors and "preferred" distributors in Colorado, maintaining communications with consumers through magazines and Grow Guides in Colorado, causing its products to be sold in Colorado, and directing cease and desist letters into this state.  (*Id.* at 11–12.)

In its most recent opinion addressing the stream of commerce line of cases, the Tenth Circuit stated that "[t]his court has followed the Supreme Court in requiring a particular focus by the defendant on the forum State to satisfy the purposeful-direction

---

The Court finds that it need not recount the same legal history in this Order, instead relying more concisely on the most recent analysis of stream of commerce cases by the Tenth Circuit set forth in *XMission, L.C. v. Fluent LLC*, 955 F.3d 833 (10th Cir. 2020).  However, the Court notes that even if it analyzed the entire line of stream of commerce cases, including *International Shoe*, *Asahi*, and *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011), the result would be no different.

[5] It is unclear who Growcentia references with the word "them," but this appears to be a reference to Hortisol.

requirement."  *XMission,* 955 F.3d at 843.  The Court finds no such "particular focus" on

Colorado by Jemie here.  Rather, as noted above, Growcentia wants the Court to

exercise personal jurisdiction over Jemie by relying on Hortisol's purported contacts with

Colorado.

First of all "[a]s a general rule, it is not enough that the defendant might have

predicted that its goods will reach the forum State."  *XMission*, 955 F.3d at 842 (citing

*Nicastro*, 564 U.S. at 882).  Additionally, as the Court has explained above, Growcentia

has not demonstrated that Jemie directs or controls Hortisol's business.  *See Fischer*,

376 F. Supp. 3d at 1186 (explaining that some degree of "direction or control" by the

defendant over the distributor is necessary for a corporation to purposefully avail itself of

a forum under Justice O'Connor's opinion in in *Asahi*).  "Absent direction or control, the

mere fact that a distributor sells a defendant's products in the forum state does not

support the exercise of jurisdiction."  *Id.* at 1187 (citing *Nicastro*, 564 U.S. at 878 and

887 (plurality op.), 892–93 (Breyer, J., concurring) (finding defendant's contacts with the

forum state insufficient to establish personal jurisdiction where there was no evidence

that the U.S. distributor was under the defendant's control)); *Eaves v. Pirelli Tire, LLC*,

2014 WL 1883791, at *18 (D. Kan. May 12, 2014) (finding no personal jurisdiction

where defendants did not exercise any control over distributor's advertising, sales, or

distribution efforts)).

Based on the information before it, the Court finds that Hortisol's marketing

efforts are nationwide, not focused on Colorado.  *See Fischer*, 376 F. Supp. 3d at 1186

("the creation of a global, or even nationwide, distribution system is insufficient, standing

alone, to demonstrate minimum contacts with Colorado").  And, most importantly,

Growcentia has not demonstrated a degree of control over Hortisol by Jemie such that the Court may fairly impute Hortisol's contacts to Jemie.  As a result, the Court finds it cannot exercise personal jurisdiction over Jemie based on Hortisol's purported contacts with Colorado.

        3.      <u>Jemie's Enforcement Actions</u>

Finally, Growcentia attempts to rely on various enforcement actions that Jemie brought outside of Colorado in its capacity as a licensor.  (ECF No. 25 at 5–6.)  Specifically, Growcentia points to a complaint Jemie filed in 2015 in the United States District Court for the Northern District of Illinois, which Growcentia argues demonstrates that Jemie advertises, promotes, and sells CANNA products in the United States "in concert with" Jemie's licensee, Hortisol.  (*Id.* at 5.)  Further, Growcentia identifies an opposition proceeding that Jemie filed in 2018 in the United States Patent and Trademark Office ("USPTO").  (*Id.* at 6.)  Growcentia relies on Jemie's statements that it "has sold an extensive amount of goods and services in connection with the CANNA Name and Mark" and "has engaged in extensive advertising and promotion of goods and services in connection with the CANNA Name and Mark' and by virtue of its 'extensive sales, advertising, and promotion of goods and services, [Jemie] has built up and now owns a most valuable goodwill and reputation symbolized by its CANNA Name and Mark.'"  (*Id.* (citation omitted).)  Growcentia contends that these facts establish Jemie's United States activities and intentional conduct in Colorado, and contradict Heesterman's declaration that Jemie does "not manufacture, sell, advertise, distribute or market any products to anyone in the United States, nor does it sell, advertise, provide or market any services to anyone in the United States."  (ECF No. 23-1 ¶ 3.)

While it is true that in the complaint in the Northern District of Illinois Jemie

alleges that it "has been manufacturing and selling products under the well-known

CANNA brand name and trademark internationally since 1993, and throughout the

United States for almost 15 years," the complaint also clarifies that it is Hortisol using

the CANNA marks and trade name in the United States; Jemie merely uses the marks

"through its licensee." (ECF No. 28 at 5; ECF No. 25-3 ¶ 6.)  Similarly, Jemie's Notice

of Opposition in the action before the USPTO states that "[Jemie] *through its licensee*

adopted and began to use in the United States the name and mark CANNA in

connection with the aforementioned goods and services." (ECF No. 25-4 ¶ 2 (emphasis

added).)  Even more importantly, neither the Illinois action nor the action before the

USPTO establish Jemie's ties to *this* dispute or the District and State of Colorado.

As a consequence, based on the foregoing, the Court finds that it lacks personal

jurisdiction over Jemie in this action.

## IV. CONCLUSION

For the reasons stated above, the Court ORDERS:

1.      Defendant Jemie B.V.'s Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2) for

Lack of Personal Jurisdiction and 12(b)(5) for Insufficient Service of Process (ECF No.

23) is GRANTED to the extent the Court finds that it lacks personal jurisdiction over

Defendant;

2.      Defendant Jemie B.V.'s Unopposed Motion for Status Update Regarding

Pending Motion to Dismiss (ECF No. 64) is DENIED AS MOOT;

3.      This case is DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction;

and

4.      The Clerk of Court shall enter judgment accordingly and shall terminate this

case.

Dated this 10th day of August, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge

18